UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------X
S.B., A MINOR UNDER THE AGE OF 14, BY HIS
MOTHER AND NATURAL GUARDIAN, RENEE
LIVINGSTON and RENEE LIVINGSTON,
INDIVIDUALLY,

        Plaintiffs,

   -against-

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, FIRST DEPUTY COMMISSIONER
RAFAEL PINEIRO, CHIEF OF DEPARTMENT JOSEPH
ESPOSITO, and JOHN DOE POLICE OFFICERS AND
SUPERVISORS ASSIGNED TO THE 73rd PRECINCT,

        Defendants.
------------------------------------------X


------------------------------------------X
ALLAN THORNTON,

        Plaintiff,

   -against-

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, FIRST DEPUTY COMMISSIONER
RAFAEL PINEIRO, CHIEF OF DEPARTMENT JOSEPH
ESPOSITO, and JOHN DOE POLICE OFFICERS AND
SUPERVISORS ASSIGNED TO THE 73rd PRECINCT,

        Defendants.
------------------------------------------X

**MEMORANDUM & ORDER**

14-CV-1021 (KAM)(PK)

14-CV-1924 (KAM)(PK)

```
-----------------------------------------X
```
TIMOTHY LIVINGSTON,

        Plaintiff,

   -against-                        15-CV-0462 (KAM)(PK)

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, FIRST DEPUTY COMMISSIONER
RAFAEL PINEIRO, CHIEF OF DEPARTMENT JOSEPH
ESPOSITO, and JOHN DOE POLICE OFFICERS AND
SUPERVISORS ASSIGNED TO THE 73rd PRECINCT,

        Defendants.
```
-----------------------------------------X


-----------------------------------------X
```
KENYETTA JACKSON,

        Plaintiff,

   -against-                        15-CV-0463 (KAM)(PK)

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, FIRST DEPUTY COMMISSIONER
RAFAEL PINEIRO, CHIEF OF DEPARTMENT JOSEPH
ESPOSITO, NEIL CASEY, ROBERT BEIERLE, and
JOHN DOE POLICE OFFICERS AND SUPERVISORS
ASSIGNED TO THE 73rd PRECINCT,

        Defendants.
```
-----------------------------------------X

```
---------------------------------------X
SHANISE JONES,

                Plaintiff,

    -against-                                    15-CV-0876 (KAM)(PK)

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, FIRST DEPUTY COMMISSIONER
RAFAEL PINEIRO, CHIEF OF DEPARTMENT JOSEPH
ESPOSITO,  NEIL CASEY, ROBERT BEIERLE, and
JOHN DOE POLICE OFFICERS AND SUPERVISORS
ASSIGNED TO THE 73rd PRECINCT,

                Defendants.
---------------------------------------X


---------------------------------------X
BRIANA JONES,

                Plaintiff,

    -against-                                    15-CV-1146 (KAM)(PK)

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, FIRST DEPUTY COMMISSIONER
RAFAEL PINEIRO, CHIEF OF DEPARTMENT JOSEPH
ESPOSITO,  NEIL CASEY, ROBERT BEIERLE, and
JOHN DOE POLICE OFFICERS AND SUPERVISORS
ASSIGNED TO THE 73rd PRECINCT,

                Defendants.
---------------------------------------X
```

**MATSUMOTO, United States District Judge:**

Plaintiffs Renee Livingston ("R. Livingston"); R. Livingston's minor child S.B.; Allan Thornton ("Thornton"); Timothy Livingston ("T. Livingston"); Kenyetta Jackson ("Jackson"); Shanise Jones ("S. Jones"); and Briana Jones ("B. Jones") bring six separate actions against the City of New York (the "City"); former New York City Police Commissioner Raymond Kelly ("Kelly"); First Deputy Commissioner Rafael Pineiro ("Pineiro"); Chief of Department Joseph Esposito ("Esposito") (collectively, the "City Defendants"); and John Doe Officers and Supervisors ("Doe Defendants") alleging that defendants violated their federal civil and state common law rights. Plaintiffs Jackson, S. Jones, and B. Jones also allege violations of their federal civil and state common law rights by New York City Police Officers Neil Casey ("Officer Casey") and Robert Beierle ("Officer Beierle"). All of the allegations arise from two related sets of purported arrests made on April 7, 2012 and April 26, 2012. Defendants have moved to dismiss all claims in each operative complaint. For the reasons provided herein, defendants' motion to dismiss is GRANTED.

## I.   *Documents Considered*

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court generally may "look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). A court may, however, consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner. Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks, citation, and alterations omitted).

Defendants have annexed a wide assortment of documents to their motion to dismiss, which they reference throughout their memoranda. For example, defendants ask the court to consider search warrants (*e.g.*, No. 14-CV-1021, ECF No. 32, Declaration of Erica M. Haber ("Haber Decl."), Exs. M-N), an arrest warrant (*id.*, Ex. U), arrest reports (*id.*, Exs. O-P, V), a complaint room screening sheet (*id.*, Ex. Q), felony complaints (*id.*, Ex. R), testimony at a hearing conducted pursuant to New York General Municipal Law § 50-h (*id.*, Ex. Y), a transcript of a hearing before a New York State Supreme Court judge (*id.*, Ex. T), and an officer's memo book

(*id.*, Ex. X). None of the above-described documents were discussed in any of plaintiffs' complaints. Accordingly, the court declines to consider them. *See Weaver v. City of New York*, No. 13-CV-20, 2014 WL 950041, at *2-4 (E.D.N.Y. Mar. 11, 2014) (declining to consider an arrest report because Second Circuit precedent does not "permit[] consideration of an arrest report on a 12(b)(6) motion" and declining to consider 50-h testimony in part because the plaintiff had "not referred to her 50-h testimony in the complaint"); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 284 (S.D.N.Y. 2015) (considering a search warrant on a motion to dismiss where a plaintiff's Fourth Amendment claims were "explicitly based on their assertions that the warrant was invalid due to a lack of particularity and a lack of probable cause," but refusing to consider separate search warrant submitted by defendants "because that document is not referenced in Plaintiffs' [complaint], nor is there any evidence that Plaintiffs had notice of the document or that they relied on that document in drafting the [complaint]"); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157-58 (2d Cir. 2006) (finding that district court erred by considering extrinsic materials that controverted factual allegations in the complaint, even though such materials were public records); *Friedl v. City of New York*,

210 F.3d 79, 84 (2d Cir. 2000) (vacating ruling because lower court had considered matters outside pleadings in dismissing the plaintiff's claims).

Defendants cite *Vasquez v. City of New York*, No. 99-CV-4606, 2000 U.S. Dist. LEXIS 8887, at *2 n.1 (S.D.N.Y. June 29, 2000), for the proposition that a district court may rely on "arrest reports," "criminal complaints," and "criminal disposition data" in addressing a motion to dismiss. (*E.g.*, No. 14-CV-1021, ECF No. 33, Defendants' Memorandum in Support of Motion to Dismiss ("Def. Mem.") at 13.) In *Vasquez*, however, the court explained that it would consider only documents the plaintiff had relied on in framing his complaint. *See* 2000 U.S. Dist. LEXIS 8887, at *2 n.1 (noting that plaintiff relied upon arrest report, criminal felony complaint, indictment, and acquittal in framing his complaint). By contrast, here, it is not at all clear that plaintiffs relied on any of the documents (with the exception of an indictment (*see infra* Background - Part II)) that defendants seek to introduce.

Plaintiffs' statement of facts in their opposition memorandum cites repeatedly to plaintiff R. Livingston's 50-h testimony. Although R. Livingston mentions in her complaint that she "testified at a statutory hearing in compliance with Section

50H of the General Municipal Law" (No. 14-CV-1021, ECF No. 1, Complaint ("S.B. / R. Livingston Compl.") ¶ 43), she did not attach or cite directly to any part of her 50-h testimony in her complaint. Nor did she implicitly reference any part of the testimony in her complaint. In fact, "there is no reason to believe that [she] relied on the transcript of [her] own testimony, rather than [her] independent recollection of the events, in drafting the pleading." *Aguilera v. Cty. of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006) (declining to consider 50-h testimony despite a plaintiff's statement in his complaint that a 50-h hearing was held); *see also HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *7 (S.D.N.Y. Sept. 27, 2012) (refusing to consider 50-h transcripts attached by plaintiffs in opposition briefs where "it [did] not appear that Plaintiffs relied on the transcripts . . . in drafting the [complaint]"). The court therefore declines to consider R. Livingston's 50-h testimony.

## II. *Factual Background*

At the pleading stage, the court assumes the truth of all of plaintiffs' well-pleaded factual allegations. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 67 (2d Cir. 2009). As noted above, plaintiffs bring six distinct actions arising from two separate incidents.

*A.*     *The Parties*

The plaintiffs in the six actions are:

(1)  R. Livingston and S.B. (who together filed a single complaint)
     (*see* No. 14-CV-1021, S.B. / R. Livingston Compl.);

(2)  Thornton (*see* No. 14-CV-1924, ECF No. 1, Complaint ("Thornton
     Compl."));

(3)  T. Livingston (*see* No. 15-CV-462, ECF No. 1, Complaint ("T.
     Livingston Compl."));

(4)  Jackson (*see* No. 15-CV-463, ECF No. 19, Amended Complaint
     ("Jackson Am. Compl."));

(5)  S. Jones, Jackson's adult daughter (*see* No. 15-CV-876, ECF
     No. 15, Amended Complaint ("S. Jones. Am. Compl.")); and

(6)  B. Jones, also Jackson's adult daughter (*see* No. 15-CV-1146,
     ECF No. 18, Amended Complaint ("B. Jones Am. Compl.")).[1]

The defendants, who differ in the individual actions,
are the City, Kelly, Pineiro, Esposito, the Doe Defendants, Officer
Casey, and Officer Beierle.

*B.*     *The April 7, 2012 Incident*

At all relevant times, R. Livingston and S.B. were
residents of the second floor apartment at 1688 St. Marks. Ave. in

---

[1] Jackson, S. Jones, and B. Jones, as discussed further below, have amended
their respective complaints. (*See infra* Background – Part III.) R. Livingston,
S.B., Thornton, and T. Livingston have not amended their complaints.

Brooklyn, a premises with a basement, a ground floor commercial location, and a second floor apartment. (S.B. / R. Livingston Compl. ¶¶ 6, 46-49.) On April 7, 2012, Jackson was also present at 1688 St. Marks, and Thornton and T. Livingston were working at one of the building's ground floor businesses. (Jackson Am. Compl. ¶¶ 45, 47; Thornton Compl. ¶¶ 42-47; T. Livingston Compl. ¶¶ 42-47.) On April 7, 2012, at 11:30 p.m., members of the New York City Police Department purportedly arrested R. Livingston, S.B., Thornton, T. Livingston, and Jackson at 1688 St. Marks. (S.B. / R. Livingston Compl. ¶¶ 56, 223; Thornton Compl. ¶ 47; T. Livingston Compl. ¶ 47; Jackson Am. Compl. ¶ 47.) Although R. Livingston, S.B., Thornton, and T. Livingston only allege generally that they were arrested by members of the New York City Police Department, Jackson specifically alleges that she was arrested by Officers Beierle and Casey. (*See id.*) Plaintiffs R. Livingston, S.B., Thornton, T. Livingston, and Jackson each make similar allegations (though with minor variations) regarding the force used in effectuating the arrests. For example, plaintiffs Thornton, T. Livingston, and Jackson each allege that they were "thrown to the floor, assaulted, battered, placed in handcuffs, [and] illegally restrained." (Thornton Compl. ¶ 48; T. Livingston Compl. ¶ 48; Jackson Am. Compl. ¶ 48.)

Subsequently, on April 20, 2012, plaintiffs R. Livingston, Thornton, T. Livingston, and Jackson were indicted by a grand jury in the Supreme Court of the State of New York.[2] (Haber Decl., Ex. S, Indictment ("Indictment").)

R. Livingston was indicted on: (1) two counts of Conspiracy in the Fourth Degree; (2) Unlawful Possession of Marijuana; (3) Criminally Using Drug Paraphernalia in the Second Degree; (4) Promoting Gambling in the Second Degree; (5) Criminal Possession of Marijuana in the Fifth Degree; and (6) Endangering the Welfare of a Child. (*See id.*)

Thornton was indicted on: (1) two counts of Conspiracy in the Fourth Degree; (2) Unlawful Possession of Marijuana; (3) Criminally Using Drug Paraphernalia in the Second Degree; (4) Promoting Gambling in the Second Degree; (5) four counts of Criminal Possession of a Weapon in the Second Degree; and (6) two counts of Criminal Possession of a Weapon in the Third Degree. (*See id.*)

T. Livingston was indicted on: (1) two counts of Conspiracy in the Fourth Degree; (2) Unlawful Possession of

---

[2] The court considers the indictment in addressing the instant motion to dismiss because the indictment was explicitly referenced in the plaintiffs' complaints. (*See* S.B. / R. Livingston Compl. ¶ 70; Thornton Compl. ¶ 65; T. Livingston Compl. ¶ 65; Jackson Am. Compl. ¶ 67.)

Marijuana; (3) Criminally Using Drug Paraphernalia in the Second Degree; (4) Promoting Gambling in the Second Degree; and (5) Criminal Possession of a Controlled Substance in the Third Degree. (*See id.*)

Finally, Jackson was indicted on: (1) two counts of Conspiracy in the Fourth Degree; (2) Unlawful Possession of Marijuana; (3) Criminally Using Drug Paraphernalia in the Second Degree; and (4) Promoting Gambling in the Second Degree. (*See id.*)

From the time of her arrest on April 7, 2012, plaintiff R. Livingston alleges that she remained in custody for approximately 45 days. (S.B. / R. Livingston Compl. ¶¶ 68-72.) From the time of their arrests on April 7, 2012, Thornton and T. Livingston allege that they remained in custody for "a significant period of time." (Thornton Compl. ¶ 67; T. Livingston Compl. ¶ 67.) Jackson, by contrast, does not allege when she was released. (Jackson Am. Compl. ¶¶ 47-51, 65.) S.B., S. Jones, and B. Jones's complaints are unclear as to whether they were ever in custody. (S.B. / R. Livingston Compl. ¶¶ 229-36; S. Jones Am. Compl. ¶¶ 59-66; B. Jones Compl. ¶¶ 59-66.)

C.   *The April 26, 2012 Incident*

On or about April 26, 2012, Jackson – who had by then apparently been released — alleges that she was once again arrested

by Officers Beierle and Casey (as well as other unnamed police officers) "after just getting out of the shower." (Jackson Am. Compl. ¶¶ 51-52, 84.) Jackson's adult daughters S. Jones and B. Jones allege that they, too, were arrested by Officers Beierle and Casey (as well as other unnamed police officers) on April 26, 2012. (S. Jones Am. Compl. ¶ 45; B. Jones Am. Compl. ¶ 45.) During the course of the April 26, 2012 arrests, Jackson, S. Jones, and B. Jones each allege that they were "placed in handcuffs" (S. Jones. Am. Compl. ¶ 46; B. Jones Am. Compl. ¶ 46; Jackson Am. Compl. ¶ 48) and thrown to the floor. (*See* Jackson Am. Compl. ¶¶ 48, 52 ("thrown to the floor"); S. Jones Am. Compl. ¶ 46 ("thrown violently to the floor"); B. Jones Am. Compl. ¶ 46 ("thrown violently to the floor").)

On or about November 7, 2014, all relevant criminal charges were formally dismissed as against R. Livingston, Thornton, T. Livingston, and Jackson. (S.B. / R. Livingston Compl. ¶¶ 105-06; Thornton Compl. ¶¶ 100-01; T. Livingston Compl. ¶¶ 100-101; Jackson Am. Compl. ¶¶ 100-01.) Plaintiffs S.B., S. Jones, and B. Jones do not mention any criminal charges against them in their respective complaints.

### III. *Procedural History*

On February 18, 2014, R. Livingston and S.B. filed their complaint. (S.B. / R. Livingston Compl.) On March 26, 2014, Thornton filed his complaint. (Thornton Compl.) On January 26, 2015, T. Livingston filed his complaint. (T. Livingston Compl.) On January 26, 2015, Jackson filed her initial complaint. (No. 15-CV-463, ECF No. 1.) On February 19, 2015, S. Jones filed her initial complaint. (No. 15-CV-876, ECF No. 1.) On March 5, 2015, B. Jones filed her initial complaint. (No. 15-CV-1146, ECF No. 1.) Each of the aforementioned complaints named only the City Defendants and John Doe officers. On April 27, 2015, plaintiffs Jackson, S. Jones, and B. Jones requested a pre-motion conference to seek leave to amend their respective complaints to add Officers Casey and Beierle as defendants. (No. 15-CV-463, ECF No. 10; No. 15-CV-876, ECF No. 7; No. 15-CV-1146, ECF No. 6.) On July 9, 2015, the court granted plaintiffs Jackson, S. Jones, and B. Jones leave to amend their complaints. (No. 15-CV-463, July 9, 2015 docket entry; No. 15-CV-876, July 9, 2015 docket entry; No. 15-CV-1146, July 9, 2015 docket entry.) On August 19, 2015, Jackson and S. Jones filed their amended complaints. (Jackson Am. Compl.; S. Jones Am. Compl.) On August 24, 2015, B. Jones filed her amended complaint. (B. Jones Am. Compl.)

Plaintiffs S.B., R. Livingston, Thornton, and T. Livingston allege that the City Defendants and Doe Defendants violated their federal civil and state common law rights by, *inter alia*, falsely arresting them on April 7, 2012, using excessive force in the process of effectuating the April 7, 2012 arrests, and subsequently maliciously prosecuting them. Plaintiff Jackson alleges that the City Defendants and Doe Defendants, as well as Officers Casey and Beierle, violated her federal civil and state common law rights by *inter alia*, falsely arresting her and subjecting her to excessive force on both April 7, 2012 and April 26, 2012, and subsequently maliciously prosecuting her. Plaintiffs S. Jones and B. Jones each allege that the City Defendants and Doe Defendants, as well as Officers Casey and Beierle, violated their federal civil and state common law rights by, *inter alia*, falsely arresting them and subjecting them to excessive force on April 26, 2012.

Defendants have moved to dismiss all of the complaints in their entirety pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(c), and filed a memorandum in support of their motion. (Def. Mem.) Plaintiffs filed a memorandum in opposition, to which defendants replied. (No. 14-CV-1021, ECF No. 36, Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Pl. Opp'n"); No.

14-CV-1021, ECF No. 34, Defendants' Reply in Support of Motion to Dismiss ("Def. Reply").)

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain "detailed factual allegations," but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the court applies the same standards applicable to motions pursuant to Fed. R. Civ. P. 12(b)(6). *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## DISCUSSION

There are well over 100 federal and state law claims asserted in these six actions. The court will therefore not list each individual claim. In this memorandum and opinion, the court addresses all of the following federal claims almost exclusively brought under 42 U.S.C. § 1983 (and the analogous state law claims) asserted by the plaintiffs: (1) false arrest; (2) excessive force; (3) malicious prosecution; (4) failure to intervene; (5) conspiracy; (6) municipal liability; and (7) supervisory liability. Because the court declines to exercise supplemental jurisdiction over the balance of plaintiffs' state law claims, the court will not list or address the remaining individual state law claims.[3]

To maintain an action under 42 U.S.C. § 1983, plaintiffs must show that defendants, acting under color of state law, deprived them of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted).

---

[3] The court agrees with defendants' characterization of the balance of plaintiffs' claims (those not listed in the above paragraph) as state law claims. In any event, plaintiffs have not questioned defendants' characterizations.

## I.    *Abandoned Claims*

As noted above, plaintiffs' six operative complaints include well over 100 total individual claims. The complaints often include identical language and very little factual detail to support the claims. Many of the individual claims provide an entirely inadequate "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In addition, plaintiffs' omnibus opposition to defendants' thorough and comprehensive motion to dismiss totaled 14 pages. (*See* Pl. Opp'n.) Plaintiffs' opposition includes a fact section that only describes the circumstances surrounding the April 7, 2012 arrest of R. Livingston.[4] (Pl. Opp'n at 1-2.)

Defendants moved for dismissal of all six complaints in their entirety, and their memorandum in support of the motion to dismiss addressed each claim raised by plaintiffs. By contrast, plaintiffs' opposition responds only to the following claims: (1) R. Livingston's federal and state malicious prosecution claims;

---

[4] The court also notes that the opposition brief violates Fed. R. Civ. P. 5.2(a)(3) by providing the full name of the minor S.B., which also repeatedly appears unredacted in R. Livingston and S.B.'s complaint as well as in the declaration annexed to plaintiffs' opposition brief. The Clerk of Court has therefore been directed to restrict access to the court and counsel for the following submissions: (1) R. Livingston's opposition brief; (2) the declaration annexed to the opposition brief; and (3) R. Livingston and S.B.'s complaint. *See Taylor v. Taylor*, No. 12-CV-37, 2013 WL 1183290, at *1 n.3 (N.D.N.Y. Mar. 21, 2013) (ordering sealing of opposition brief and certain exhibits where minors' full names were revealed).

(2) all plaintiffs' federal and state excessive force claims; (3) S. Jones and B. Jones's federal false arrest claims; (4) all plaintiffs' federal failure to intervene claims; and (5) all plaintiffs' claims, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of New York.[5]

Accordingly, although all other claims can properly be deemed abandoned, *see Newton v. City of New York*, 738 F. Supp. 2d 397, 416 n.130 (S.D.N.Y. 2010) ("[Plaintiff] did not respond to defendants' motion to dismiss his claim against the City for [a police officer-defendant's] wrongdoing in his Opposition Brief, and therefore abandoned his claim." (emphasis omitted)); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *Kronemberg v. Winthrop Univ. Hosp.*, No. 15-CV-3235, 2016 WL 2939153, at *1 n.1 (E.D.N.Y. May 19, 2016); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's

---

[5] Plaintiffs' opposition also argues that the April 7, 2012 claims against the Doe Defendants and Officers Beierle and Casey relate back to the filing of the original complaints and that S.B.'s claims are not time-barred due to his infancy. Aside from the particular claims described above, however, plaintiffs do not defend any of their additional claims on the merits.

arguments that the claim should be dismissed." (internal quotation marks and citation omitted)), the court nevertheless turns to an analysis of plaintiffs' federal (and state law analogue) claims.

## II. _Relation Back_

Defendants first argue that plaintiffs R. Livingston, Thornton, T. Livingston, and Jackson's claims arising directly from the April 7, 2012 incident — including their federal claims of false arrest and false imprisonment, excessive force, and failure to intervene — should be dismissed as against the Doe Defendants and Officers Casey and Beierle because the claims are untimely.[6] (Def. Mem. at 14-21.) Specifically, defendants argue that claims against the Doe Defendants and Officers Casey and Beierle do not (and could not, even if plaintiffs were permitted to amend) relate back under Fed. R. Civ. P. 15. (_Id._)

The statute of limitations applicable to federal claims of false arrest and false imprisonment, excessive force, and failure to intervene is three years. _See Gilmore v. Goord_, 360 F. Supp. 2d 528, 530 (W.D.N.Y. 2005); _Shomo v. City of New York_, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for

---

[6] Defendants concede for purposes of the instant motion that S.B.'s claims were tolled due to his infancy, but nevertheless contend that all of his claims fail on the merits. (Def. Reply at 3 n.4.) Defendants have not argued that plaintiffs' claims arising from the April 26, 2012 incident do not relate back.

claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."). The statute of limitations begins to run on a § 1983 claim when a plaintiff knows of the injury on which a claim is predicated. *See Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). If a defendant is named outside the statute of limitations in an action that was otherwise brought within the statute of limitations, the question becomes whether claims against that particular defendant relate back to the filing of the complaint.

Here, the statute of limitations began to run on R. Livingston, Thornton, T. Livingston, and Jackson's § 1983 claims arising from the April 7, 2012 incident when they were arrested. The limitations period ran three years later, on April 7, 2015. R. Livingston, Thornton, T. Livingston, and Jackson each filed their initial complaints before April 7, 2015. R. Livingston, Thornton, and T. Livingston, however, only named the City Defendants and the Doe Defendants. They have not named or served any other individual or entity. R. Livingston, Thornton, and T. Livingston contend that their claims against the Doe Defendants arising from the April 7, 2012 incident relate back to the filing of the complaint. (Pl. Opp'n at 6-8.) By contrast, Jackson filed a pre-motion conference

letter seeking leave to amend her complaint to add Officers Beierle and Casey on April 27, 2015 (No. 15-CV-463, ECF No. 10), outside the limitations period for the April 7, 2012 claims. Jackson argues that her proposed claims arising from the April 7, 2012 incident against Officer Beierle, Officer Casey, and the Doe Defendants relate back to the filing of her original, timely complaint. (Pl. Opp'n at 6-8.)

A.    *Relation Back Under Fed. R. Civ. P. 15(c)(1)(C)*

The federal standard for relation back is governed by Fed. R. Civ. P. 15(c)(1)(C). Where an amended complaint adds a new party, to relate back under Fed. R. Civ. P. 15(c)(1)(C) the following requirements must be met:

> (1) the claim must have arisen out of conduct set out in the original pleading;
>
> (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense;
>
> (3) that party should have known that, *but for a mistake of identity*, the original action would have been brought against it; and . . .
>
> (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period.

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (emphasis in original).

22

Here, none of the plaintiffs have met the third requirement under Fed. R. Civ. P. 15(c)(1)(C) regarding the Doe Defendants, Officer Beierle, and Officer Casey because the failure to name the Doe Defendants, Officer Beierle, and Officer Casey before the expiration of the statute of limitations for the April 7, 2012 federal claims was not the product of a "mistake of identity." A "failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Id.* at 518 (internal quotation marks and citation omitted). "[L]ack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" *Ceara v. Deacon*, 68 F. Supp. 3d 402, 407 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Plaintiffs offer no explanation whatsoever for the failure to name the Doe Defendants, Officer Beierle, or Officer Casey. They simply argue that the named officers were "united in interest" with the City (Pl. Opp'n at 6-8.), which is irrelevant to whether they have met the "mistake" requirement under Fed. R. Civ. P. 15(c)(1)(C). Accordingly, the court concludes that plaintiffs' federal claims against the Doe Defendants, Officer Beierle, and Officer Casey arising from the April 7, 2012 incident are time-barred. *See Young-Flynn v. Kelly*, 234 F.R.D. 70, 74 (S.D.N.Y. 2006) (finding that claims against

newly-added defendant did not relate back in *pro se* action, where defendant was not named because plaintiff did not know his identity).

### B.    *Relation Back Under Fed. R. Civ. P. 15(c)(1)(A)*

Plaintiffs argue that their claims relate back under Fed. R. Civ. P. 15(c)(1)(A), which "permits an amended pleading to relate back when 'the law that provides the applicable statute of limitations allows relation back.'" *Hogan*, 738 F.3d at 509 (quoting Fed. R. Civ. P. 15(c)(1)(A)). Under New York law, N.Y. C.P.L.R. § 203 authorizes relation back of a previously unknown defendant. Section 203 permits claims against new defendants to relate back when:

> (1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) *the new party knew or should have known that, but for [a] mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.*

*Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 121 (E.D.N.Y. 2009) (emphasis added) (internal quotation marks and citation omitted). The "mistake" requirement in § 203 tracks the "mistake" requirement in Fed. R. Civ. P. 15(c)(1)(C). *See Terry v. City of Rochester*, No. 10-CV-6579, 2016 WL 1192693, at *4 n.2

24

(W.D.N.Y. Mar. 22, 2016) ("New York Courts have held that the 'mistake' requirement in section 203 is to be interpreted in the same way as the mistake requirement found in Rule 15(c)(l)(C)."). Accordingly, for the same reasons the April 7, 2012 claims against the Doe Defendants, Officer Beierle, and Officer Casey do not relate back under Fed. R. Civ. P. 15(c)(1)(C), they do not relate back under N.Y. C.P.L.R. § 203. *See Bender v. City of New York*, No. 14-CV-4386, 2015 WL 524283, at *6 (S.D.N.Y. Feb. 10, 2015) ("Because [plaintiff] cannot satisfy Rule 15(c)(1)(C)'s 'mistake' element, she cannot satisfy § 203(c) either.").

As noted above, plaintiffs argue that the "officers are united in interest with the City of New York." (Pl. Opp'n at 6.) Even if plaintiffs are correct that the officers are united in interest with the City, however, they do not address the entirely distinct "mistake" requirement under § 203. *See Amaya*, 645 F. Supp. 2d at 123 (finding that plaintiffs who satisfied the "unity in interest" prong of § 203 had nevertheless failed to satisfy the "mistake" prong).[7]

---

[7] Although plaintiffs do not rely on N.Y. C.P.L.R. § 1024, that statute provides a special mechanism for asserting claims against John Doe Defendants under New York law. *See Terry*, 2016 WL 1192693, at *4. Section 1024, however, requires that a party "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Hogan*, 738 F.3d at 519 (internal quotation marks and citation omitted). Here, there is no indication at all in the record that plaintiffs exercised "due diligence" to identify any particular defendant by name or that defendants withheld information about

Accordingly, R. Livingston, Thornton, T. Livingston, and Jackson's federal false arrest, false imprisonment, excessive force, and failure to intervene claims arising from the April 7, 2012 incident and asserted against the Doe Defendants, Officer Beierle, and Office Casey do not relate back, are untimely, and therefore are dismissed.[8]

### III. *False Arrest Claims Arising From the April 26, 2012 Incident*

Although R. Livingston, Thornton, T. Livingston, and Jackson's federal false arrest claims arising from the April 7, 2012 incident are time-barred as against the Doe Defendants, Officer Beierle, and Officer Casey (*see supra* Discussion – Part II), Jackson, S. Jones, and B. Jones also bring false arrest and false imprisonment claims arising from the April 26, 2012 incident. Because "false arrest and false imprisonment are essentially the same causes of action," *Dickerson v. Monroe Cty. Sheriff's Dep't*, 114 F. Supp. 2d 187, 191 (W.D.N.Y. 2000), the court's analysis here applies to both. *See Mitchell v. Home*, 377 F. Supp. 2d 361,

---

particular officers who were involved in the April 7, 2012 incident. Plaintiffs do not argue otherwise. *See Doe v. New York*, 97 F. Supp. 3d 5, 18-20 (E.D.N.Y. 2015) (finding claims untimely under N.Y. C.P.L.R § 1024 where plaintiff failed to act with due diligence). Accordingly, plaintiffs' claims do not relate back under N.Y. C.P.L.R. § 1024.

[8] Because the court dismisses R. Livingston, Thornton, T. Livingston, and Jackson's federal claims arising out of the April 7, 2012 incident (as well as all other federal claims in the six related actions), the court does not address any of R. Livingston, Thornton, T. Livingston, or Jackson's state law claims arising out of the April 7, 2012 incident.

376 (S.D.N.Y. 2005) ("Because a cause of action for false arrest is essentially the same tort as false imprisonment, they will be discussed as one cause of action." (citation omitted)). To adequately plead a false arrest claim under § 1983 (as well as under state law), a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted).

Jackson's false arrest and false imprisonment claims arising from her April 26, 2012 arrest are barred because — as she admits — she was indicted by a grand jury. (Jackson Am. Compl. ¶ 67.) The "cause of action for false arrest or imprisonment . . . [does not] permit[] damages for confinement imposed pursuant to legal process." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). A "warrant predicated on grand jury action bars a false arrest claim, requiring the plaintiff to proceed instead under a theory of malicious prosecution." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 734 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

S. Jones and B. Jones, however, were not indicted by a grand jury. Defendants claim that S. Jones and B. Jones were not even arrested. (Def. Mem. at 24 ("[I]t is clear from the record, and by their own allegations, that plaintiffs S. Jones and B. Jones were not arrested, but rather were detained during the execution of a lawful search warrant.").) S. Jones and B. Jones both allege that, during the April 26, 2012 search, they were "illegally stop[ped] and arrest[ed]," "illegally restrained," "denied of [their] liberty to move or leave the apartment," and that they "stood there in handcuffs as police officers ransacked [their] apartment." (S. Jones Am. Compl. ¶¶ 45-50; B. Jones Am. Compl. ¶¶ 45-50.) Although S. Jones and B. Jones appear to concede that they were not formally arrested (as their mother, Jackson, was), they argue that their "forcible handcuffing . . . clearly constituted an arrest and imprisonment." (Pl. Opp'n at 8-9.)

Plaintiffs are correct that "[u]nder both federal and New York law, a plaintiff need not have been formally arrested to claim false arrest." *Calderon v. City of New York*, 138 F. Supp. 3d 593, 610 (S.D.N.Y. 2015). Officers may, however, "detain the occupants of the premises while a proper search is conducted," *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 403 (S.D.N.Y. 2009)

28

("Police executing a search warrant are privileged to detain individuals, even to the point of handcuffing them, while the search is carried out.").

In *Muehler v. Mena*, 544 U.S. 93, 95 (2005), the Court considered the claim of a § 1983 plaintiff who alleged she had been unreasonably detained during a search of her father's house, where she was residing. During the search, the officers discovered the plaintiff in her bed, pointed a submachine gun at her, and handcuffed her. *Id.* at 96; *see also Mena v. City of Simi Valley*, 332 F.3d 1255, 1259-61 (9th Cir. 2003), *vacated and remanded sub nom. Mena*, 544 U.S. at 95. The officers kept her in handcuffs for between two and three hours in a converted garage as they conducted the search, and subsequently released her. *Mena*, 544 U.S. at 96, 100. The Court held that the detention did not run afoul of the Fourth Amendment. *Id.* at 95, 102. The Court first explained that an "officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." *Id.* at 98 (internal quotation marks and citation omitted). The plaintiff's "detention for the duration of the search was reasonable . . . because a warrant existed to search [the

residence] and she was an occupant of that address at the time of the search." *Id.*

Here, the detentions of S. Jones and B. Jones — as alleged in their amended complaints — do not rise to the level of the prolonged, intrusive detentions held valid in *Mena*. S. Jones and B. Jones make conclusory allegations that they were "illegally restrained," "denied of [their] liberty to move or leave the apartment," and that they "stood there in handcuffs as police officers ransacked [their] apartment." (S. Jones Am. Compl. ¶¶ 45-50; B. Jones Am. Compl. ¶¶ 45-50.) Plaintiffs provide no further factual elaboration regarding the duration or nature of the restraint. Because the law is clear that individuals not suspected of criminal activity can be detained incident to a lawful search, *see Mena*, 544 U.S. at 95, 102, mere allegations that plaintiffs were handcuffed and denied the ability to leave their apartment cannot state a claim for relief as the defendants' alleged acts are consistent with legitimate police action. *See id.; Bancroft*, 672 F. Supp. 2d at 396-98, 403-04 (dismissing unreasonable seizure claim under *Mena* where police officers, *inter alia*, (1) mistakenly searched, pursuant to a facially valid warrant, the wrong apartment for firearms and (2) detained and handcuffed a partially nude female plaintiff without immediately allowing her to dress); *see*

*also Twombly*, 550 U.S. at 554 (recognizing the need at the pleading stage for allegations "plausibly suggesting (not merely consistent with)" liability).[9]

Accordingly, Jackson, S. Jones, and B. Jones's false arrest and false imprisonment claims arising from the April 26, 2012 incident are dismissed. To the extent that Jackson, S. Jones, and B. Jones assert state law false arrest or false imprisonment claims arising from the April 26, 2012 incident, such claims are subject to the same analysis provided above and are therefore dismissed for the same reasons. *See Fanelli v. City of New York*, No. 13-CV-1423, 2013 WL 6017904, at *2 n.4 (S.D.N.Y. Nov. 1, 2013) ("[T]he elements of false arrest and false imprisonment are the same (under both federal and state law)." (citation omitted)).[10]

## IV. *Excessive Force Claims Arising From the April 26, 2012 Incident*

Although R. Livingston, Thornton, T. Livingston, and Jackson's federal excessive force claims against the Doe Defendants, Officer Beierle, and Officer Casey arising from the

---

[9] S.B.'s false arrest and false imprisonment claims (S.B. / R. Livingston Compl. ¶¶ 219-36) fail for the same reasons outlined above with respect to S. Jones and B. Jones. Although S.B. was apparently taken to a police station on April 7, 2012 (*id.* ¶ 222), he sets forth no facts indicating that his detention was unreasonable in light of his mother's detention.

[10] To the extent Jackson, S. Jones, and B. Jones allege that any of the City Defendants are liable for falsely arresting them on April 26, 2012, such claims fail for lack of alleged personal involvement.

April 7, 2012 incident are time-barred (*see supra* Discussion –
Part II), plaintiffs Jackson, S. Jones, and B. Jones also bring
excessive force claims arising out of the April 26, 2012 incident.
"Police officers' application of force is excessive, in violation
of the Fourth Amendment, if it is objectively unreasonable in light
of the facts and circumstances confronting them, without regard to
their underlying intent or motivation." *Maxwell v. City of New
York*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation marks
and citation omitted). "Not every push or shove, even if it may
later seem unnecessary in the peace of a judge's chambers, violates
the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989)
(internal quotation marks and citation omitted).[11]

Further, a "plaintiff must allege that he sustained an
injury to maintain an excessive force claim. Such injury need not
be severe, however." *Acosta v. City of New York*, No. 11-CV-856,
2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (citing *Robison
v. Via*, 821 F.2d 913, 924 (2d Cir. 1987)). "[T]he Second Circuit

---

[11] To the extent plaintiffs assert Eighth Amendment violations arising from the
circumstances of the arrest (*see, e.g.*, Jackson Am. Compl. ("Said use of
excessive force . . . constituted cruel and unusual treatment under the Eighth
Amendment . . . .")), such claims fail as a matter of law. *See Johnson v.
Ledwin*, No. 05-CV-658, 2008 WL 4147251, at *1 n.3 (W.D.N.Y. Sept. 2, 2008)
("Because the alleged violations of Plaintiff's constitutional rights occurred
during his arrest, rather than while incarcerated, the Fourth and Fourteenth
Amendments, rather than the Eighth Amendment, are the proper source of such
rights applicable to Plaintiff's excessive force . . . claim[].", *report and
recommendation adopted*, 2008 WL 4280095 (W.D.N.Y. Sept. 15, 2008), *as amended*
(Sept. 16, 2008).

and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Lemmo v. McKoy*, No. 08-CV-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (collecting cases); *see also Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 376 (S.D.N.Y. 2015) ("Courts in this District have routinely dismissed excessive force claims where the plaintiff alleged that he was thrown to the ground, but did not allege any physical injuries." (collecting cases)).

Plaintiffs Jackson, S. Jones, and B. Jones assert that defendants used excessive force by: (1) using handcuffs improperly and (2) throwing the plaintiffs to the ground in the course of arresting them. The court addresses these two allegations in turn.

A.  *Handcuffs*

"Although handcuffs must be reasonably tight to be effective, overly tight handcuffing can constitute excessive force." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases). In assessing the reasonableness of handcuffing, courts consider: 1) whether the handcuffs were unreasonably tight; 2) whether a defendant ignored

pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists. *See Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005); *Lynch*, 567 F. Supp. 2d at 468. "The injury requirement is particularly important, because in order to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Morocho v. New York City*, No. 13-CV-4585, 2015 WL 4619517, at *8 (S.D.N.Y. July 31, 2015) (internal quotations and citations omitted). Furthermore, "there is a consensus among district courts in this circuit that a claim of excessive force is not established by allegations that overly tight handcuffs caused minor, temporary injuries." *Gonzalez v. Bronx Cty. Hall of Justice Court Officer Mark Hirschman Shield 7421*, No. 15-CV-810, 2016 WL 354913, at *4 (S.D.N.Y. Jan. 28, 2016) (internal quotation marks, citation, and alteration omitted). For example, in *Gonzalez*, a plaintiff brought a claim of excessive force, alleging that her handcuffs were too tight and that she had suffered "bruising and abrasions to her wrists" as a result. *Id.* The court granted the officers' motion to dismiss because the plaintiff had not alleged that she asked the officers to loosen her handcuffs and because the alleged bruising and abrasions were "precisely the type of minor injuries routinely held by courts in

34

this circuit to be insufficient to state a claim of excessive force." *Id.*

Here, plaintiffs' only allegations regarding the use of handcuffs is that they were "placed in handcuffs." (S. Jones. Am. Compl. ¶ 46; B. Jones Am. Compl. ¶ 46; Jackson Am. Compl. ¶ 46.) Plaintiffs' allegations fall far short of the more substantial, serious, and particularized allegations in *Gonzalez*, in which the plaintiff nevertheless failed to state an excessive force claim. *See Gonzalez*, 2016 WL 354913, at *4. Plaintiffs do not allege that they asked the police officers to remove or loosen the handcuffs, and plaintiff have not plausibly pled that they suffered any injury as a result of the handcuffs. *See id.* Plaintiffs' conclusory allegations regarding handcuffs cannot support an excessive force claim.

B.    *Violent Shoving*

Plaintiffs' only other allegation related to excessive force is that they were "thrown to the floor" or "thrown violently to the floor." (*See* Jackson Am. Compl. ¶¶ 48, 52 ("thrown to the floor"); S. Jones Am. Compl. ¶ 46 ("thrown violently to the floor"); B. Jones Am. Compl. ¶ 46 ("thrown violently to the floor").) Plaintiffs, however, have not explained the nature of any injuries they suffered as a result of being "thrown to the

35

floor." Instead, they assert in a conclusory fashion that they suffered from "serious personal injuries," "physical harm," "emotional harm," and "great mental anguish." (Jackson Am. Compl. ¶¶ 4, 57, 73, 112, 142; *see also* S. Jones Am. Compl. ¶¶ 66, 75, 85, 95, 113, 144; B. Jones Am. Compl. ¶¶ 66, 75, 85, 95, 113, 144.)

Without more, the above-quoted allegations are insufficient under *Twombly*. *See Higginbotham*, 105 F. Supp. 3d at 376 ("Courts in this District have routinely dismissed excessive force claims where the plaintiff alleged that he was thrown to the ground, but did not allege any physical injuries." (collecting cases)); *see also Youngblood v. City of New York*, No. 15-CV-3541, 2016 WL 3919650, at *4 (S.D.N.Y. June 27, 2016) (finding that allegations of "physical and emotional injuries" arising from use of excessive force are no more than "labels and conclusions" under *Twombly*); *Guerrero v. City of N.Y.*, No. 12-CV-2916, 2013 WL 673872, at *5 (S.D.N.Y. Feb. 25, 2013) (finding allegation that officers "physically abused" plaintiff and "threw him around like a toy" insufficient where plaintiff alleged no specific injury other than "mental and emotional harm"); *Lyman v. City of Albany*, 536 F. Supp. 2d 242, 249 (N.D.N.Y. 2008) (dismissing excessive force claim where plaintiff alleged that he was "injured and subjected to physical

and mental pain and suffering, emotional distress, embarrassment, humiliation and fear").

*Robison*, 821 F.2d at 913, on which plaintiffs rely (*see* Pl. Opp'n at 5-6), does not dictate a different result. In *Robison*, the plaintiff's excessive force claim survived summary judgment where she alleged that, during an arrest, an officer twisted her arm, "yanked" her, "threw [her] up against the fender" of a car, and "pushed" her. 821 F.2d at 916, 924. The *Robison* plaintiff alleged that she "suffered bruises lasting a 'couple weeks.'" *Id.* She further specified that the bruising occurred on her hips and her wrists. *Id.* at 916. The allegations of force as well as physical injury were far more particularized in *Robison* than in the instant case, where plaintiffs have not identified either the specific type or location of their injuries.

Neither does *Maxwell*, 380 F.3d at 108-09, aid plaintiffs. In *Maxwell*, a plaintiff's excessive force claim survived summary judgment in light of highly specific allegations that she: (1) was shoved head first into a police car; (2) hit her forehead on the partition; and (3) was taken to a hospital and "treated for pain in her lower back and left arm and for headache." *Id.* By contrast, the boilerplate allegations of "physical harm," "mental anguish," and "emotional harm" here do not specify in any

detail the nature of the plaintiffs' injuries. Accordingly, Jackson, S. Jones, and B. Jones's federal excessive force claims arising from the April 26, 2012 incident must be dismissed.

In addition, Jackson, S. Jones, and B. Jones bring state law claims for assault and battery arising from the April 26, 2012 incident. The state law assault and battery claims, however, are subject to the same analysis the court employs to address the excessive force claims. *See Graham v. City of New York*, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) ("Federal excessive force claims and state law assault and battery claims against police officers are nearly identical."). Accordingly, Jackson, S. Jones, and B. Jones's state law assault and battery claims are dismissed.[12]

Plaintiffs Jackson, S. Jones, and B. Jones will, however, be permitted leave to replead their excessive force claims should they choose to do so.

---

[12] Plaintiff S.B. brings an excessive force claim arising out of the April 7, 2012 incident, but provides no factual detail regarding any officer's use of force. (*See generally* S.B. / R. Livingston Compl.) S.B.'s federal excessive force claim and related state law assault and battery claims are therefore dismissed. Further, even if R. Livingston, Thornton, T. Livingston, and Jackson's federal excessive force claims arising from the April 7, 2012 incident could relate back as against the Doe Defendants, Officer Beierle, or Office Casey, their excessive force claims would fail for the same reasons discussed above with respect to Jackson, S. Jones, and B. Jones's excessive force claims arising out of the April 26, 2012 incident. Their excessive force allegations lack sufficient factual detail to pass muster under *Twombly*. To the extent any plaintiffs asserts claims against the City Defendants arising from the use of excessive force, such claims fail for lack of alleged personal involvement.

## V.  *Malicious Prosecution Claims*

Plaintiffs R. Livingston, Thornton, and T. Livingston each bring claims for malicious prosecution. Plaintiffs R. Livingston, Thornton, and T. Livingston claim they were maliciously prosecuted in connection with their arrest on April 7, 2012. (S.B. / R. Livingston Compl. ¶¶ 99-107; Thornton Compl. ¶¶ 94-102; T. Livingston Compl. ¶¶ 94-103.) Plaintiff Jackson appears to allege that she was maliciously prosecuted in connection with her arrests on both April 7, 2012 and April 26, 2012. (Jackson Am. Compl. ¶¶ 94-103.)

To prevail on a malicious prosecution claim, a plaintiff must allege that each "(1) defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (internal quotation marks, citation, and alterations omitted). "The elements of malicious prosecution under section 1983 are 'substantially the same' as the elements under New York law; 'the analysis of the state and the federal claims is identical.'" *Bailey v. City of New York*, 79 F.

Supp. 3d 424, 448 (E.D.N.Y. 2015) (quoting *Boyd v. City of N.Y.*, 336 F.3d 72, 75 (2d Cir. 2003)).

Defendants' arguments to dismiss the malicious prosecution claims are principally directed to probable cause. (Def. Mem. at 26-31; Def. Reply at 8-13.) Defendants claim that plaintiff has not rebutted the presumption of probable cause that attaches after an indictment issues, as occurred here. Plaintiffs' opposition only addresses the federal and state malicious prosecution claims asserted by R. Livingston, on the ground that R. Livingston's factual allegations defeat the presumption of probable cause arising from the grand jury indictment. (Pl. Opp'n at 2-4.) Plaintiffs do not make any arguments opposing dismissal of the malicious prosecution claims asserted by Thornton, T. Livingston, or Jackson. (*See generally* Pl. Opp'n.)

Plaintiffs' malicious prosecution claims fail for three distinct reasons, as discussed in further detail below. First, plaintiffs fail to adequately allege the personal involvement of any of the named defendants in their purported malicious prosecutions. Second, to the extent plaintiffs' malicious prosecution claims are premised on grand jury testimony, defendants are entitled to absolute immunity. Third, plaintiffs

fail to rebut the presumption of probable cause arising from the indictment.

A.  *Personal Involvement*

First, plaintiffs have failed to allege the personal involvement of any of the defendants in their respective prosecutions. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiffs nowhere allege the specific, personal involvement of any of the defendants in the alleged malicious prosecutions. The allegations are functionally identical — and equally bare and conclusory — in each of the four complaints alleging malicious prosecution. (*See* R. Livingston / S.B. Compl. ¶¶ 99-107; Thornton Compl. ¶¶ 94-102; T. Livingston Compl. ¶¶ 94-103; Jackson Am. Compl. ¶¶ 94-103.) In R. Livingston's complaint, for example, she alleges: (1) "plaintiff was maliciously and unlawfully prosecuted through perjured statements of the various agents, servants and/or employees of the defendants"; (2) "defendants through their agents, servants and/or employees knew that said allegations . . . were false, malicious and perjured and were not the result of any illegal or wrong doing on the part of

the plaintiff"; and (3) "defendants herein through their agents, servants and/or employees continued to maliciously, falsely and illegally prosecute the plaintiff." (R. Livingston / S.B. Compl. ¶¶ 100, 102-03.) The above-quoted allegations - which do not even directly name any of the defendants or allege the particular actions they undertook to maliciously prosecute plaintiff - are insufficient under *Twombly* to state plausible malicious prosecution claims. *See, e.g.*, *Barber v. Ruzzo*, No. 10-CV-1198, 2011 WL 4965343, at *2 (N.D.N.Y. Oct. 19, 2011) ("Simply stating that [defendants] were 'personally and actively involved in the continuation of criminal proceedings against [a plaintiff],' is grossly insufficient to establish personal involvement in the actual prosecution.").

B.   *Grand Jury Immunity*

Second, defendants have absolute immunity for any testimony before the grand jury. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."). The *Rehberg* Court also explained that absolute immunity extends beyond actual testimony before a grand jury. *See* 132 S. Ct. at 1506-7. The absolute immunity also covers "preparatory activity, such as a preliminary discussion in which the witness relates the substance

42

of his intended testimony." *Id.* (holding that absolute immunity "may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution"). On the other hand, the immunity does not extend to, for example, preparation of false affidavits or the fabrication of evidence concerning an unsolved crime. *See Kalina v. Fletcher*, 522 U.S. 118, 129–131 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-76 (1993); *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) ("If the claim exists independently of the grand jury testimony, it is not 'based on' that testimony, as that term is used in *Rehberg*.").

Plaintiffs' allegations supporting their malicious prosecution claims are mere boilerplate and fail to state plausible claims. As noted above, plaintiffs merely allege that they were "maliciously and unlawfully prosecuted through perjured statements" and that "defendants through their agents, servants and/or employees knew that said allegations . . . were false, malicious and perjured." (*E.g.*, S.B. / R. Livingston Compl. ¶¶ 100, 102.) Plaintiffs suggest, at least with respect to R. Livingston's claims (the only malicious prosecution claims addressed in plaintiffs' opposition brief), that the allegations underpinning

43

the complaint relate to grand jury testimony covered by *Rehberg*.
Plaintiffs argue that a plaintiff is "not required to provide . . .
a detailed account of the precise mechanism whereby the grand jury
was deceived." (Pl. Opp'n at 4 (internal quotation marks, citation,
and alteration omitted).) Defendants contend that plaintiffs'
allegations solely pertain to conduct covered by *Rehberg*. (Def.
Reply at 9 ("[P]laintiffs do not set forth a single allegation to
show that their purported malicious prosecution claims are 'based
on' anything other than Grand Jury testimony.").)

The court, however, is not certain that the malicious
prosecution allegations only relate to conduct covered by *Rehberg*.
The purported "perjured statements," for example, could well be
false affidavits filled out by a defendant, an action that would
fall outside of the absolute immunity conferred by *Rehberg*. *See*
*Kalina*, 522 U.S. at 129–31. The court is therefore unwilling to
rest dismissal of the malicious prosecution claims entirely on the
grounds of absolute immunity. *See McLennon v. New York City*, No.
13-CV-128, 2015 WL 1475819, at *8 n.19 (E.D.N.Y. Mar. 31, 2015)
("[B]ecause the Amended Complaint alleges misconduct by the
officer defendants including the fabrication of evidence and
withholding of material exculpatory evidence from prosecutors,
separate from the officers' alleged perjury before the grand jury

and during other trial proceedings, the court declines to dismiss plaintiffs' malicious prosecution claim on absolute immunity grounds at this juncture."). To the extent, however, that plaintiffs' claims are predicated on testimony by defendants before the grand jury and other conduct covered by *Rehberg*, the court concludes that their malicious prosecution allegations fail to state a claim.[13]

## C. *Presumption of Probable Cause*

Finally, plaintiffs' malicious prosecution claims also fail because they have not adequately rebutted the presumption of probable cause that attached after the indictment issued. "'Once a suspect has been indicted . . . the law holds that the Grand Jury action creates a presumption of probable cause.'" *Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004) (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)). "The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that

---

[13] Although there had previously been some uncertainty regarding whether *Rehberg* applied to New York state law malicious prosecution claims, *see Bonds v. City of New York*, No. 12-CV-1772, 2014 WL 2440542, at *12 (E.D.N.Y. May 30, 2014), the New York Court of Appeals has since made clear that "a witness cannot be liable for malicious prosecution based on his or her false testimony at a trial or pretrial proceeding, such as a grand jury proceeding." *Torres v. Jones*, 47 N.E.3d 747, 767-68 (N.Y. 2016) (*citing Rehberg*, 132 S. Ct. at 1510).

they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Id.* at 283 (internal quotation marks and citation omitted). Even at the pleading stage, plaintiffs must plausibly allege facts that can rebut the presumption of probable cause. *See Bond v. City of New York*, No. 14-CV-2431, 2015 WL 5719706, at *7 (E.D.N.Y. Sept. 28, 2015).

Here, plaintiffs R. Livingston, Thornton, T. Livingston, and Jackson admit they were indicted by a grand jury. (S.B. / R. Livingston Compl. ¶ 70; Thornton Compl. ¶ 65; T. Livingston Compl. ¶ 65; Jackson Am. Compl. ¶ 67; *see also* Indictment.). The presumption of probable cause, therefore, attached. Plaintiffs' allegations — outlined above — are far too conclusory to rebut the presumption of probable cause that arose following the indictments. None of the allegations even suggest the nature of the purported misconduct. Accordingly, plaintiffs have failed to rebut the presumption of probable cause. *See Bond*, 2015 WL 5719706, at *7 (dismissing complaint where plaintiff "asserted no facts in his complaint or otherwise, other than his attorney's own conjecture, to suggest that any of the officers involved in this prosecution engaged in . . . intentional misconduct that rises to the level required for a malicious prosecution claim"); *Stukes v.*

46

*City of New York*, No. 13-CV-6166, 2015 WL 1246542, at *6 (E.D.N.Y. Mar. 17, 2015) (finding that plaintiff's malicious prosecution claim failed "to plausibly suggest that his grand jury indictment was procured by fraud, perjury, the suppression of evidence, or other bad faith police conduct" despite plaintiff's allegations that the assistant district attorney presented "false-facts" to the grand jury and that the defendants failed to submit "exculpatory evidence" to the grand jury); *see also Simmons v. New York City Police Dep't*, 97 F. App'x 341, 343 (2d Cir. 2004) ("Although [plaintiff] testified that the arresting officer addressed him using racial epithets and told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct."). Accordingly, R. Livingston, Thornton, T. Livingston, and Jackson's malicious prosecution claims must be dismissed.

As noted above, the "elements of malicious prosecution under section 1983 are substantially the same as the elements under New York law; the analysis of the state and the federal claims is identical." *See Bailey*, 79 F. Supp. 3d at 448 (internal quotation marks and citation omitted). To the extent plaintiffs sought to

47

assert state law malicious prosecution claims in their complaints, such claims are dismissed for the same reasons provided above. *See Smith v. City of New York*, No. 04-CV-3286, 2010 WL 3397683, at *14 (S.D.N.Y. Aug. 27, 2010) ("Because plaintiff's federal claims for false arrest [and] malicious prosecution . . . are dismissed on summary judgment . . . to the extent plaintiff brings analogous state law claims, those claims are dismissed as well because the elements are the same.").[14]

## VI. *Failure to Intervene Claims*

All plaintiffs also bring failure to intervene claims. Plaintiffs' failure to intervene claims fail in the absence of an adequately pled underlying constitutional violation. *See Taveres v. City of New York*, No. 08-CV-3782, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010) (recognizing that failure to intervene claim requires, *inter alia*, that officers failed to intervene to prevent another officer's constitutional violation); *see also Ladoucier v. City of New York*, No. 10-CV-5089, 2011 WL 2206735, at *4 (S.D.N.Y. June 6, 2011) (same). Accordingly, the failure to intervene claims are dismissed.

---

[14] Because the court finds that R. Livingston's state law malicious prosecution claim fails on the merits, the court does not address R. Livingston's argument that she complied with New York's notice of claim requirement regarding the malicious prosecution claim. (Pl. Opp'n at 2-3.)

## VII. *Conspiracy Claims*

Plaintiffs S.B., R. Livingston, Thornton, and Jackson assert federal conspiracy claims under 42 U.S.C. §§ 1985(3) and 1983. S.B., R. Livingston, and Thornton assert conspiracy claims against the City Defendants and the Doe Defendants (*e.g.*, S.B. / R. Livingston Compl. ¶¶ 135-47), while Jackson asserts her conspiracy claim against the City Defendants as well as the Doe Defendants, Officer Casey, and Officer Beierle. (Jackson Am. Compl. ¶¶ 131-37.) All of plaintiffs' conspiracy claims, however, are barred by the intracorporate conspiracy doctrine.

The intracorporate conspiracy doctrine "bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity, at least where the complaint fails to allege that the various [municipal] entities were effectively acting as separate entities in carrying out the alleged conspiracy." *Dunlop v. City of New York*, No. 06-CV-433, 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008). Defendants here are all employees of a single municipal entity, the City. There are no allegations that they were acting as separate entities during the conspiracy. Accordingly, plaintiffs' conspiracy claims are barred by the intracorporate conspiracy doctrine and must be dismissed. *See, e.g.*, *Rodriguez v. City of New York*, 644 F. Supp.

2d 168, 200-01 (E.D.N.Y. 2008) (dismissing conspiracy claims against police officers and administrators under intracorporate conspiracy doctrine); *see also Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (intracorporate conspiracy doctrine barred conspiracy claims where the defendants — police officers, a police chief, the police department, and the village — were all members of a single municipality).

## VIII. *Municipal Liability Claims*

Plaintiffs also each assert municipal liability claims against the City of New York. Because plaintiffs have failed to state a claim for the violation of an underlying federal constitutional or statutory right, they cannot hold the City accountable via municipal liability under *Monell*, 436 U.S. at 690. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (recognizing that a plaintiff who cannot show an underlying violation of a constitutional right cannot succeed on a *Monell* claim); *see also Jackson v. Vill. of Ilion, New York*, No. 14-CV-563, 2016 WL 126392, at *9 (N.D.N.Y. Jan. 11, 2016) ("Since there has been no underlying federal constitutional violation, plaintiff's *Monell* claim against the Village must also be dismissed."). Accordingly, plaintiffs' municipal liability claims are all dismissed.

## IX. *Supervisory Liability Claims*

To the extent plaintiffs seek to assert supervisory liability claims under § 1983, such claims also fail. Defendants argue that plaintiffs' claims against the City Defendants should be dismissed for failure to allege personal involvement. (Def. Mem. at 41-43.) Plaintiffs do not oppose defendants' motion to dismiss the supervisory liability claims. (*See generally* Pl. Opp'n.)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citation omitted). Although *respondeat superior* is not a theory of liability for a § 1983 claim,

> supervisory personnel may nonetheless be considered "personally involved" if a plaintiff can show: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to plaintiff's rights by failing to act on information indicating that unconstitutional acts were occurring.

*Rheaume v. Hofmann*, No. 10-CV-318, 2011 WL 2947040, at *3 (D. Vt. June 6, 2011) (citing *Colon*, 58 F.3d at 873), *report and recommendation adopted*, 2011 WL 2940319 (D. Vt. July 19, 2011).

Plaintiffs assert only conclusory and vague allegations against the City Defendants, which are identical in each operative complaint. For example, in their most detailed allegation against the City Defendants, plaintiffs assert that "Raymond Kelly, Rafael Pineiro and Joseph Esposito and the John Doe Supervisors are responsible for the practices, policies and customs of the New York City Police Department, as well as for the hiring, screening, training, supervising, controlling, retaining and disciplining of the persons employed by the New York City Police Department." (S.B. / R. Livingston Compl. ¶ 20; Thornton Compl. ¶ 19; T. Livingston Compl. ¶ 19; Jackson Am. Compl. ¶ 21; S. Jones Am. Compl. ¶ 19; B. Jones Am. Compl. ¶ 19.)

Plaintiffs' allegations are wholly inadequate to state a claim for supervisory liability under § 1983. *See Scaggs v. New York Dep't of Educ.*, No. 06-CV-0799, 2007 WL 1456221 at *18 (E.D.N.Y. May 16, 2007) ("In plaintiffs' blanket allegations of supervisory liability against *all* defendants, they fail to indicate personal involvement by any of the named defendants. The complaint does not indicate the role of such defendants in failing

to prevent constitutional violations. . . . Plaintiffs' conclusory allegations are insufficient to plead Section 1983 claims of supervisory liability as to the individually-named defendants."); *Bertuglia*, 839 F. Supp. 2d at 723 n.4 ("It is insufficient for the plaintiffs to rely on group pleading against [defendants] without making specific factual allegations [against them]."). Accordingly, the supervisory liability claims are dismissed.

## X.  *Supplemental Jurisdiction*

Because the court has dismissed all of plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over the balance of plaintiffs' state law claims. *See Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 61 (2d Cir. 1998) (recognizing that state law claims should generally be dismissed when all federal claims are dismissed); *Lizarraga v. Cent. Parking, Inc. - Waldorf Astoria Hotel*, No. 13-CV-4703, 2014 WL 2453303, at *3 (S.D.N.Y. June 2, 2014) ("Because the Court dismisses [plaintiff's] federal claims, it declines to exercise supplemental jurisdiction over his state and city claims.").

## XI.  *Leave to Amend*

Under Fed. R. Civ. P. 15(a), a court "should freely give leave [to amend] when justice so requires." Although "it is the usual practice upon granting a motion to dismiss to allow leave to

repleaded, such leave should be denied where the proposed amendment would be futile." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 322 (S.D.N.Y. 2009) (internal quotation marks, citation, and alteration omitted).

An amendment to a pleading is "futile where the claim is barred by the applicable statute of limitations period." *Sepulveda v. City of New York*, No. 01-CV-3117, 2003 WL 22052870, at *2 (S.D.N.Y. Sept. 2, 2003). Because any federal claims against the Doe Defendants, Officer Beierle, or Officer Casey arising from the April 7, 2012 incident would be time-barred, such claims must be dismissed with prejudice. Further, any amendment against the City Defendants for federal claims arising from the April 7, 2012 incident would be futile.

With regard to claims arising from the April 26, 2012 incident, Jackson, S. Jones, and B. Jones have already had an opportunity to amend their complaint. In the interests of justice, however, Jackson, S. Jones, and B. Jones will be permitted leave to replead their excessive force claims arising from the April 26, 2012 incident. Leave to amend all other claims arising from the April 26, 2012 incident is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss

is GRANTED. Because the court has dismissed all federal claims in this action, the court declines to exercise supplemental jurisdiction over any remaining state law claims not explicitly addressed in this memorandum and order. Jackson, S. Jones, and B. Jones will be permitted leave to replead their excessive force claims arising from the April 26, 2012 incident. They must do so within 30 days of this order. The Clerk of Court is respectfully directed to: (1) restrict to the court and counsel plaintiffs' opposition brief, the declaration annexed to the opposition brief, and R. Livingston and S.B.'s complaint (No. 14-CV-1021, ECF Nos. 1, 36); (2) enter judgment in each action; and (3) close these six related cases.

**SO ORDERED.**

Dated:    August 29, 2016
          Brooklyn, New York

                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York